# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| MICHAEL NEWMAN AND MELISSA NEWMAN | ) ) ) |
| Defendants. | ) ) |

CIVIL ACTION NO. 7:18-CV-00469

## **OPINION**[1]

This declaratory judgment action concerns whether the homeowner's insurance policy issued by Plaintiff, Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), defend or indemnify Michael or Melissa Newman (the "Newmans") for the personal injuries a young child ("Infant Doe") suffered while in the care of Melissa Newman. The parties have filed cross motions for summary judgment which are ripe for decision. Because I find that Infant Doe's injuries arose out of Melissa Newman's home day care enterprise, the Penn National insurance policy does not provide liability coverage to either Melissa or Michael Newman (the "Newmans") for Infant Doe's injuries. Therefore, I **GRANT** Penn National's motion for summary judgment (Dkt. 19) and **DENY** the Newmans' motion for summary judgment. (Dkt. 17).

---

[1] This action is before me on consent of the parties pursuant to 28 U.S.C. § 636(c). Dkt. 12.

1

**I.     Background**

    **A.  The Policy**

Penn National issued to the Newmans a homeowner's insurance policy (the "Policy") with effective dates from January 15, 2017 to January 15, 2018 providing coverage for the Newmans' home at 419 Winding Way in Covington, Virginia (the "Premises"). The Policy extends personal liability coverage for any occurrence on the premises for which the Newmans are legally liable. Dkt. 1, ¶ 7, ¶ 15, Ex. 3. The Policy excludes coverage, however, for bodily injuries "[a]rising out of or in connection with a 'business' engaged in by an 'insured'" or "[a]rising out of the rendering of or failure to render professional services…" Id. Specifically, the business exclusion states as follows:

> **1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":
>
>> b.  Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
>> …
>> d.   Arising out of the rendering of or failure to render professional services; ...

Dkt. 1, Ex. 3. The Policy defines a "business" to include "a trade, profession, or occupation." Id.

A homeowner's special endorsement under the Policy extends the definition of a business to include a home day care enterprise, which is excluded from liability.

> If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business". Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II – Liability Coverages because a "business" of an "insured" is excluded under exclusions 1.b of Section II – Exclusions;

Dkt. 1, Ex. 3, Form HO 23 37 04 91, p. 1.

### B. Infant Doe's Injury and Threat of Litigation

On November 30, 2017, Infant Doe was in the care of Melissa Newman when he placed his palms on a hot pellet stove causing severe burns to his hands. Dkt. 1, ¶ 10. On February 22, 2018, an attorney representing Infant Doe, Russell Updike, sent Melissa Newman a letter (the "Notice Letter") stating that he represented Infant Doe for the injuries he received while under Melissa Newman's care. Dkt. 1, Ex. 1. Updike explained that Infant Doe suffered severe burns to his hands and had undergone months of treatment both at the University of Virginia and at home. Id. Updike demanded information about Melissa Newman's homeowner's insurance coverage and threatened to file suit against her if she did not respond within 30 days. Id. The Newmans contend that upon receipt of the Notice Letter, Michael Newman's father, Harry Newman, provided the letter to Penn National's agent, Gerald Franson. (Dkt. 8, Ex. 1). Penn National maintains that it did not receive notice of Infant Doe's injury and the Notice Letter until March 2, 2018. (Dkt. 1, ¶ 13).

### C. Home Day Care Enterprise

The Newmans admitted in their Answers to the Complaint that Melissa Newman provided day care services to Infant Doe the day he was injured, and that "at one time" she provided day care services in her home for Infant Doe for which she received a daily fee of $20.00. Dkt. 8, ¶¶ 7-10, 20; Dkt. 9, ¶¶ 7-10, 20.

Both Melissa and Michael Newman sat for an examination under oath as part of Penn National's investigation of Infant Doe's injuries. Michael Newman testified that he did not have much knowledge of Melissa Newman's babysitting efforts. Dkt. 20, Ex. 4, pp. 4–11. He knew that she started providing babysitting services because she did not want to work at Walmart any longer and that she babysat for supplemental income. Id. at p. 4. Michael Newman stated that whatever income Melissa Newman earned while babysitting was hers to keep. Id. at pp. 9–10.

Melissa Newman explained in her examination under oath that she began providing babysitting services for pay as far back as 2014. Dkt. 20, Ex. 2, p. 13. She started that year with one child whom she kept two to three times per week and would charge $20.00 per day. Id. at p. 11. The fee charged covered breakfast, lunch, two snacks and drinks. Id. at p. 4. In late 2014 or early 2015, Ms. Newman started caring for twin girls whom she watched two to five times per week and would charge $40.00 daily for both girls. Id. at pp. 10–11. By 2015, the first child Ms. Newman watched had started school, and Ms. Newman began to babysit the child of a school teacher whom she cared for five days a week while school was in session. Id. at pp. 14–15. She charged $20.00 for each of the children under her care. Id. at p. 18.

Most of the children Melissa Newman watched were pre-school age. Id. at p. 19. She did sporadically watch school-aged children who, generally, were children of schoolteachers who needed care on days their teacher parent may have had conferences when schools were closed. Id. at pp. 36–37. Ms. Newman would charge $20.00 daily for each of these children as well. Id. at p. 37.

Ms. Newman began providing day care to Infant Doe in October 2017, about a month before his injury. Id. at p. 24. At the time, she was watching two other children and charged a daily rate of $20.00 for each child. Id. at p. 25. Generally, she was paid once every two weeks for

4

her services. Id. at pp. 4, 5, 18. Ms. Newman had also begun to use a form for parents to complete that provided emergency contact information for the parents, identification of the child's doctor, and an authorization to permit her to obtain emergency medical care for the child if necessary. Id. at pp. 24–26.

Infant Doe's mother completed the record regarding her child and executed an authorization to allow Ms. Newman to secure emergency medical services if necessary. Id. at pp. 31–32. On this form, Melissa Newman handwrote, and Infant Doe's mother initialed, the following acknowledgement regarding insurance: "I am aware that Melissa Newman does not have day care insurance." Id. at p. 33.

Penn National's Complaint seeks to declare the rights and other legal obligations between Penn National and Michael and Melissa Newman. Dkt. 1, ¶ 1. In its prayer for relief, Penn National asks that the court find that Penn National has no duty to defend or indemnify the Newmans for damages which might be awarded to compensate Infant Doe for the injuries he sustained. Id. at p. 10. Penn National argues on summary judgment that the injuries suffered by Infant Doe arose in the context of a day care enterprise that falls within the policy's business exclusion provision. See Dkt. 20. The Newmans have also filed a motion for summary judgment contending that Penn National's declaratory judgment action is premature because no suit has been filed on behalf of Infant Doe, and, further, that it provided notice of this loss to Penn National as required under the Policy.[2] See Dkt. 17.

## II. Analysis

### A. Justiciable Controversy

---

[2] Penn National concedes that a material issue of fact exists of whether the Newmans gave notice of Infant Doe's injury shortly after the occurrence or three months later after Ms. Newman received the Notice Letter. Dkt. 22, pp. 7–8.

A declaratory judgment proceeding is appropriate to determine actual controversies between adverse litigants, but the court has no authority to issue advisory opinions arising out of pure abstraction and hypotheticals. See Muskrat v. United States, 219 U.S. 346, 31 S. Ct. 250, 55 L.Ed. 246 (1911); United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564 (1947); Flast v. Cohen, 393 U.S. 83, 88 S. Ct. 1942, 20 L.Ed.2d 947 (1968). Here, the Newmans contend that since no suit has been filed on behalf of Infant Doe, any declaratory judgment is purely advisory since the court could not know whether any claim filed would be covered under the Policy. Further, the Newmans contend that the duty of an insurer to defend its insured is much broader than the duty to indemnify and a court cannot determine whether the duty to defend is excluded under the Policy until the Newmans are defendants in a filed lawsuit.

The letter from Updike to Melissa Newman and the notice provided to Penn National removes the claim against the Newmans from the realm of the hypothetical even in the absence of an underlying lawsuit or claim filed on behalf of Infant Doe. See T.H.E. Ins. Co. v. Dowdy's Amusement Park, 820 F. Supp. 238, 240 (E.D. N.C. 1993) ("It is much more sensible to permit resolution of coverage issues when the dispute first arises than to require all parties to endure unnecessary uncertainty and expense until a third-party complaint has been filed."); Virginia Int'l Terminals, LLC v. Keystone Transp. Sols., LLC, No. 2:17cv537, 2018 WL 2054578, at *8 (E.D. Va. Apr. 5, 2018). Whether Plaintiff must indemnify and defend the Newmans is a concrete controversy based on a definite factual issue: whether the injury of Infant Doe took place in the context of a day care enterprise that falls under the Policy's business exclusion. A declaratory judgment action is an appropriate vehicle to determine Penn National's obligations, if any, to provide coverage to the Newmans for Infant Doe's injuries. See United Capitol Ins. Co. v. Kapilloff, 155 F.3d 488, 494 (4th Cir.1998) ("It is well established that a declaration of parties'

rights under an insurance policy is an appropriate use of the declaratory judgment mechanism."); See State Farm Fire & Cas. Co. v. Miraglia, 565 F.Supp.2d 709 (N.D. Tex. 2008) (actual controversy exists where insurer sought declaration as to its obligation to defend and indemnify its insured).

The imminent controversy of whether Infant Doe's injuries arose in Melissa Newman's home day care enterprise and thus are excluded from coverage implicates the interests of both Michael and Melissa Newman. See State Farm Mut. Auto Ins. Co. v. Mid–Continent Cas. Co., 518 F.2d 292, 296 (10th Cir. 1975) ("We recognize that all interested parties should be joined in a declaratory judgment action whenever possible and that a declaratory judgment should not be entered unless it disposes of a controversy and serves a useful purpose."). Updike addressed the Notice Letter to Melissa Newman, and neither Newman has indicated that they do not intend to seek coverage. Given those facts, I conclude there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Miller v. Augusta Mut. Ins. Co., No. 04-2281, 157 Fed. Appx. 632, 637, 2005 WL 3327532, at *4 (4th Cir. Dec. 8, 2005) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). See also ACE Am. Ins. Co. v. Michelin N. Am., Inc., 470 F. Supp. 2d 602 (D. S.C. 2007) (no Article III controversy where, unlike here, insured declared that it would not seek coverage from insurer seeking a declaratory judgment). Therefore, a justiciable controversy exists to determine whether Penn National has an obligation to defend and indemnify Melissa and Michael Newman for any claim which may be filed arising from Infant Doe's injuries.

### B. Day Care Exclusion

Under Virginia law, insurance policy exclusions are construed strongly against the insurer which has the burden of proving that the exclusion applies. St. Paul Ins. v. Nusbaum & Co., 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984); White v. State Farm, 208 Va. 394, 396, 157 S.E.2d 925, 927 (1967). Also, an insurer's duty to defend under its policy is broader than the duty to indemnify and applies if only some of the alleged conduct would fall within coverage. See Liberty Univ. v. Citizens Ins. Co. of Am., 792 F.3d 520, 528 (4th Cir. 2015); Travelers Indemn. Co. v. Obenshain, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978).

Penn National argues that the business exclusion of the policy precludes coverage for the injuries Infant Doe suffered while under the care of Melissa Newman through her day care enterprise, and, therefore, it owes the Newmans no duty either to defend or to indemnify them for any claims which may be asserted against them on behalf of Infant Doe. In Virginia Mutual Insurance Co. v. Hagy, 232 Va. 472, 475, 352 S.E.2d 316, 318 (Va. 1987), the Virginia Supreme Court recognized that a "business pursuit" exclusion in the context of a homeowner's policy requires proof of continuity and profit motive. Continuity requires customary engagement or a stated occupation, and profit motive requires a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements. Id.

Penn National claims that the undisputed evidence establishes that Melissa Newman ran a day care enterprise out of her home for several years and that Michael Newman was aware that she was doing so to earn money. Penn National asserts that the continuity and profit motive of Melissa Newman's day care enterprise is reflected in the fact that she required parents to register their children with her and she charged a daily fee for this service. For these reasons, Penn National asserts that the uncontested facts show that Melissa Newman operated a home day care

enterprise and that Infant Doe's injuries arose from this business. By contrast, Melissa and Michael Newman argue, without asserting any facts regarding the scope of Melissa Newman's day care endeavors, that Penn National has failed to prove that the business exclusion applies to negate coverage. Instead, the Newmans insist that uncertainty about what Infant Doe may allege in a complaint against them prohibits the court from ruling in Penn National's favor.

Once a party seeking summary judgment has carried this burden, "the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial." Gardner v. Montgomery Cty. Teachers Fed. Credit Union, 864 F.Supp.2d 410, 413 (D.Md. 2012) (citing Fed.R.Civ.P. 56(e)(2)). Here, however, Defendants have offered no evidence to create an issue of fact that Melissa Newman's childcare for Infant Doe did not constitute a day care enterprise under the policy. While Melissa Newman has provided testimony implying that she did not view her services as constituting such a business and while both Defendants declare that they only performed such services for fees "from time to time," these disputes of material fact do not rise to the level to defeat summary judgment. See Dkt. 19, Ex. 2, p. 64. The Newmans must point to specific facts or provide evidence they expect to prove at trial to show that a factual dispute exists to avoid summary judgment. "The party opposing summary judgment must . . . 'properly address [the movant]'s assertion of fact' in order to proceed to trial." Horace Mann Ins. Co. v. Barney, No. 2:17-cv-16, 2018 WL 1733989, at *2 (W.D. Va., 2018). As this court has recently held,

> A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citations omitted). Moreover, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." Id. at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. Abcor Corp. v. AM Int'l, Inc.,

> 916 F.2d 924 (4th Cir. 1990) (quoting Anderson, 477 U.S. at 249–50). "While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958–59 (4th Cir. 1996).

TechINT So. Grp., LLC v. Sasnett, No. 5:18-cv-37, 2019 WL 4935432, at *3 (W.D. Va. Oct. 7 2019).

The Notice Letter from Russell Updike states that he represents Infant Doe "with respect to injuries he sustained in your home while you were providing childcare to him on November 30, 2017." Dkt. 1, Ex. 1. Updike further stated that Infant Doe's injuries occurred while he was "under the care of you and your mother." Id. Melissa Newman admitted in her Answer and testified in her examination under oath that she provided home day care services for multiple children of non-relatives and was paid for these services. See Dkt. 8, ¶¶ 7-10, 22; Dkt. 20, Ex. 2, pp. 2, 6. She had the parents of the children, including Infant Doe's mother, complete a registration form that advised the parents that she does not have day care insurance and requested information about previous day care facilities the child had attended. See Dkt. 20, Ex. 2, p. 11. These facts are uncontradicted by any evidence offered by the Newmans and establish that Melissa Newman engaged in a home day care enterprise with both the continuity and profit motive sufficient to constitute a business as defined under the Policy. Further, the undisputed facts demonstrate that Infant Doe's injuries arose in the context of Melissa Newman's day care enterprise. See Farmers Ins. Co. of Arizona v. Wiechnick, 166 Ariz. 266, 801 P.2d 501 (Ariz. App. 1990) (babysitter paid to regularly care for five children in addition to her own three own over a period of time of about seven months engaged in business pursuit excluded by homeowner's policy) (citing Virginia Mut. Ins. Co., 232 Va. at 475, 352 S.E.2d at 318, for business standard). The Policy excludes coverage for injury arising out of such a day care enterprise. See Standard Mutual Ins. Co. v. Chastain, 21 Fed. Appx. 499 (7th Cir. 2001)

(provider of homeowner's insurance policy had no duty to defend or indemnify for injury incurred in course of day care activity that fell under business exclusion). Thus, Penn National has carried its burden to show that it is entitled to judgment as a matter of law that Infant Doe's injuries arose from a home day care enterprise, and that it is not required under the Policy to indemnify or defend the Newmans as to any claim arising from those injuries.

The absence of a pending lawsuit against either or both Newmans does not leave me to speculate about whether the policy covers this loss. I conclude that it does not, and Penn National has no duty to defend or to indemnify the Newmans for any claim asserted by or on behalf of Infant Doe or his parents. See Mesa Underwriters Specialty Ins. Co. v. Daffy's on River, Inc., No. 1:13-CV-396, 2014 WL 5025850 (S.D. Miss. Oct. 8, 2014) (insurer has no duty to defend or indemnify where no complaint had been filed but claim described in notice letter clearly fell under policy's exclusion provision). The reference in the Notice Letter that Infant Doe sustained his injury under the care of both Melissa Newman and her mother does not create a triable issue of fact as Infant Doe was injured because Melissa Newman has established and maintained her home day care enterprise. The fact that Melissa Newman's mother may have been part of the enterprise does not change that conclusion, and Defendants offer no contrary evidence. See Metro. Prop. and Cas. Ins. Co. v. Adamez ex rel. Adamez, 102 F.Supp.3d 1080, 1084 (D. Minn. 2015) (business exclusion of homeowner's insurance policy applies regardless of whether insured delegated supervision responsibilities to daughter under whose care infant sustained injury).

Because no circumstance exists in which Plaintiff would have to provide coverage for the injuries sustained by Infant Doe due to these injuries taking place in the course of a daycare enterprise, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

### C. Notice

Because the Court's holdings as to jurisdiction and the daycare exclusion resolve the cross motions for summary judgment, I do not reach the issue of whether Defendants fulfilled the notice provisions of the policy.

### III. Conclusion

The Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendants' Motion for Summary Judgment.

An appropriate ORDER will be entered.

Entered: March 31, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge